UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DAVID MATTA, | No. 2:19-cv-0943 TLN CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CRAIG KOENIG, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 14, 2015, petitioner was convicted by a jury of first-degree murder in the Superior Court of Sacramento County. He was sentenced to 25-years-to-life imprisonment on November 17, 2015. Petitioner presents four claims for relief. For the reasons which follow, the court will recommend that the petition for writ of habeas corpus be denied.

I. Legal Standards

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.2d 1146, 1149 (9th Cir. 2000).

1      "Conclusory allegations which are not supported by a statement of specific facts do not
2  warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  It is not part of the court's
3  function to search the record for facts that might support a habeas petitioner's claims.  See Adams
4  v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990).

5      Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal
6  habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

15     The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different,
16  as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

24  Bell v. Cone, 535 U.S. 685, 694 (2002).
25     "A state court's determination that a claim lacks merit precludes federal habeas relief so
26  long as 'fairminded jurists could disagree' on the correctness of the state court's decision."
27  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,
28  664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

2

state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

II. Facts Presented at Trial

On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's trial as follows:

> Defendant lived with his 75-year-old mother, Janet Matta, in her Sacramento County home until her death on May 18, 2014. The relationship included several instances of elder abuse, in which defendant physically and verbally abused his mother in the years before her death. During the month leading up to Matta's murder, defendant exhibited signs of paranoia. For instance, on April 14, 2014, defendant called the Sacramento County Sheriff's Department to report that a man had come to his door holding a stick, or a bush, or a gun, and that he had pepper sprayed the man. Defendant could not provide a description of the man but reported that the man was standing around the corner from his home. Defendant called the sheriff's department again two hours later to report seeing five prowlers around his home who would not communicate with him. Deputies who responded to the call noted that defendant appeared agitated and paranoid but was not aggressive. On April 18, 2014, defendant again called the sheriff's department, claiming he saw a female posing in weird positions across the street from his house. He also said the female was sitting in a green plastic bucket. The weekend before Matta's death defendant told his neighbor he was seeing things on her front lawn and thought her family was "pranking" him. He told her that he was about to snap. Defendant also told her he had video cameras set up outside his home and saw people outside his home all the time.
>
> On May 18, 2014, at 4:45 p.m., defendant called 911 to report that his mother was dead after she attacked him in his bedroom. When the deputies arrived, they detained defendant after a brief struggle and placed him in the back of a patrol car with the in-car camera running. For the next several hours, while defendant was sitting in the patrol car, he made many spontaneous profanity-laced outbursts. His outbursts included, "You fucked that shit up again, you fucked it all up, didn't ya, fucking cunt. (long pause) (banging) Stupid cunt. You see the fuckin' problems you got me into you fuckin' stupid cunt, fuckin' douche cock, piece of fuckin' shit," and "I told you to shut your fuckin' mouth, mom, shut your fuckin' mouth. I kicked

3

> you to fuckin' death and I don't feel sorry about it." He also complained multiple times that his handcuffs were too tight and that he was being treated worse than a prisoner of war. When asked what his mental health issues were, defendant responded posttraumatic stress disorder and his mother.
>
> Matta's body was found on the floor in the family room. There was blood on a blanket thrown on a recliner chair and several blood stains on a couch. The rest of the house appeared neat and orderly. Also on the recliner were tortilla chips and smeared salsa or refried beans. A bowl of tortilla chips was on the table next to the recliner. A candlestick holder had hair on it matching Matta's hair color. An autopsy revealed bruises and abrasions all over Matta's body. She also had a circular contusion on the back of her head. This blunt force trauma did not cause Matta's death, which was actually the product of asphyxiation. Defendant had no apparent injuries.
>
> In the office of the house, there was an empty pint-sized bottle of vodka in the trash can and half of an empty pint-sized bottle of vodka on a table. Defendant's blood was drawn at 8:12 p.m. and showed that he had a blood-alcohol content of 0.24. Defendant moved to have his blood-alcohol content admitted into evidence. The trial court denied the request, citing Evidence Code section 352, because no expert testimony or evidence of defendant's drinking pattern was presented to assist the jury in determining what his blood-alcohol content would have been at the time of the murder. Instead, the parties stipulated that defendant's blood draw at 8:12 p.m. showed the presence of alcohol.
>
> Among other instructions, the jury was instructed on the principles of self-defense and voluntary manslaughter based on a sudden quarrel or the heat of passion. The jury was also instructed that it could use evidence of defendant's voluntary intoxication when determining whether defendant acted with the intent to kill or with premeditation and deliberation. The trial court denied defendant's request to instruct the jury on voluntary manslaughter based on imperfect self-defense.

ECF No. 15-7 at 2-3.

III. State Court Action

Petitioner's claims were presented to the Superior Court of Sacramento County on collateral review. ECF No. 15-10. Petitioner's claims were denied in a reasoned decision. ECF No. 15-11. Petitioner also presented his claims to the California Court of Appeal and Supreme Court. The claims were denied without comment. ECF Nos. 12-17.

/////

/////

/////

IV. <u>Petitioner's Claims and Analysis</u>

    A. <u>Ineffective Assistance of Counsel</u>

Petitioner's first claim is as follows:

> Petitioner's counsel failed to have forensic evidence tested and brought to trial which would have proven alleged victim died of natural causes from heart disease. No evidence was presented, no expert witnesses called, no allegation was rebutted and no meaningful access to cross examination of witnesses. No defense at all whatsoever.

In order to show ineffective assistance of counsel, petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. <u>Id</u>. at 690. The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. <u>Id</u>. Also, petitioner defendant must show prejudice. <u>Id</u>. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>.

Here, petitioner fails to point to anything suggesting that trial counsel's performance fell below an objective standard of reasonableness or that any prejudice to petitioner's case was the result of the actions or inactions of trial counsel. Petitioner's allegations are conclusory and do not provide any basis upon which this court could find a violation of the Sixth Amendment.

Furthermore, petitioner is precluded from obtaining relief as to claim 1 by 28 U.S.C. § 2254(d). The Superior Court of Sacramento County denied the claim for failure to point to evidence suggesting trial counsel rendered ineffective assistance. ECF No. 15-11 at 1. That decision is not at odds with any federal law, nor based upon an unreasonable determination of the facts.

For these reasons, claim 1 should be rejected.

/////

As for claim 2, petitioner alleges:

> Petitioner's counsel failed to have forensic evidence from autopsy tested to find cause of death. Medical records documenting alleged victims heart disease and bruising not investigated. An independent medical examiner was not consulted as promised by counsel, neither was a toxicologist consulted to determine cause of death.

As with claim 1, petitioner's ineffective assistance of counsel claim is conclusory and not supported by evidence. Assuming counsel did not take the action identified by petitioner above, petitioner fails to point to anything suggesting that was the result of objective unreasonableness or that petitioner's defense was prejudiced. The claim is also barred by 28 U.S.C. § 2254(d). Again, the Superior Court of Sacramento County denied the claim for failure to point to evidence suggesting trial counsel rendered ineffective assistance, ECF No. 15-11 at 1, and the decision is not at odds with any federal law, nor based upon an unreasonable determination of the facts.

### B. Prosecutorial Misconduct

In claim 3 petitioner asserts the prosecution knowingly presented perjured testimony:

> Medical examiner stated that "blunt force injuries" was a cause of death and noted this on death certificate. During testimony, he then admits that "blunt force injuries" were just "soft tissue injuries" and that alleged victim "really" died of asphyxia. Death certificate with false cause of death was displayed to the jury.

"A judgment of conviction based on testimony known by representatives of the state to be perjured deprives the defendant of due process of law." Mooney v. Holohan, 294 U.S. 103, 112–13 (1935). "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." Tapia v. Tansy, 926 F.3d 1554, 1563 (10th Cir. 1991).

It appears the medical examiner's ultimate conclusion as to cause of death was in conflict with the death certificate and the medical examiner's prior testimony. But petitioner fails to point to anything suggesting that the prosecution knowingly presented false testimony instead of the witness simply changing his testimony; a conclusion which was also reached by the Superior Court of Sacramento County. ECF No. 15-11 at 2. As such, petitioner's third claim must be rejected on the merits and because relief is precluded under 28 U.S.C. § 2254(d).

/////

C. "Tissue Samples"

In his final claim, petitioner asserts that "tissue samples" should have been tested or, if they were tested, the results should have been provided to petitioner. There is no evidence the "tissue samples" referenced by petitioner were tested. As to whether they should have been, petitioner fails to point to anything suggesting failure to conduct such tests amounts to a violation of petitioner's federal rights. The Superior Court of Sacramento County essentially rejected petitioner's claim for the same reasons finding that petitioner did not show samples were ever tested and that the result of such tests benefit petitioner's defense by suggesting a cause of death other than asphyxia. ECF No. 15-11 at 3. For these reasons, petitioner's fourth claim must be denied on the merits and because relief is precluded under 28 U.S.C. § 2254(d).

V. Conclusion

The allegations made by petitioner in the claims before this court are conclusory and not supported by a universe of facts suggesting that petitioner is entitled to habeas relief. For these reasons, and because relief as to each of petitioner's claims is precluded under 28 U.S.C. § 2254(d), petitioner's petition for a writ of habeas corpus should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for a writ of habeas corpus (ECF No. 1) be denied; and

2. This case is closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 7, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
matt0943.157